UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------

KEEP ON KICKING MUSIC, LTD.,

           Plaintiff,

           -against-

FREDERICK "TOOTS" HIBBERT, *et al.*,

           Defendants.

------------------------------------------------

15cv7464

OPINION & ORDER

WILLIAM H. PAULEY III, United States District Judge:

        Plaintiff Keep on Kicking Music, Ltd. and Third Party Defendant Marc Antoine Chetata (together, the "Movants") move for sanctions against Defendants Frederick "Toots" Hibbert, Toots Music, Inc., and Alla Son Music, Inc. (together, "Hibbert"). Movants also seek to enjoin Hibbert from pursuing a separate but related action in Jamaica. Finally, Movants seek an order of attachment against Hibbert. For the following reasons, Movants' motion is granted in part and denied in part.

## BACKGROUND

        This dispute stems from Hibbert's repeated failures to produce documents and appear for deposition. In September 2016, Movants served interrogatories, document requests, and a notice of deposition on Hibbert. After Hibbert failed to respond, Movants re-served the same requests in December 2016. In January 2017, Hibbert finally responded, seeking an extension to comply with the requests and serving his own set of discovery demands on Movants. In February 2017, after denying Hibbert's extension request, Movants filed a pre-motion conference letter seeking leave of court to file a sanctions motion.

At the pre-motion conference, based on Hibbert's representations that he would fully comply with the discovery demands and appear for deposition by the end of March 2017, Movants withdrew their request for sanctions. Despite his assurances, however, Hibbert did not produce a single document or appear for deposition. Consequently, in May 2017, this Court permitted Movants to file this motion.

DISCUSSION

I. Sanctions

Under Rule 37, Movants seek drastic relief: (1) striking Hibbert's answer and counterclaims; (2) granting declaratory relief for their remaining claims; and (3) directing an inquest on damages. Such relief, if granted, would effectively end this action. In order to strike a pleading and render a default judgment as a discovery sanction, this Court must find that Hibbert defied this Court's orders willfully or in bad faith. See Webb v. Bermudez, 1996 WL 599673, at *1 (S.D.N.Y. Oct. 17, 1996); Burns v. Imagine Films Entertainment, Inc., 1996 WL 808065, at *2 (W.D.N.Y. Oct. 10, 1996). Dismissal of an action is "pungent, rarely used, and conclusive. A district judge should employ it only when he is sure of the impotence of lesser sanctions." Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir. 1996).

Citing his extensive travel schedule as a performing artist, Hibbert concedes that he has been careless throughout the discovery process. He also claims that his former manager, who was tasked with overseeing this litigation, failed to keep him abreast of these discovery issues. (Affirmation of Frederick Hibbert at ¶¶ 7–8, ECF No. 68.) Hibbert maintains that these repeated lapses were neither willful nor in bad faith.

Having supervised discovery in this case and conducted several conferences with counsel, this Court concludes that sanctions are appropriate. Hibbert places much of the blame

on the nature of his work and his manager's failure to inform him of the developments in this action, but none of these reasons excuse Hibbert—a defendant and third party plaintiff in this action—from fulfilling his obligations. Because of his failures, discovery has lagged for almost a year.

But the type of sanctions Movants seek, at least at this juncture in the litigation, are too severe. Hibbert was never warned that his failures could result in dismissal of the action. Such remedies are appropriate as sanctions where, for example, a party "repeatedly failed to heed discovery orders, [ ] delaying resolution of [the] case for more than three years." Mahon v. Texaco Inc., 122 Fed. App'x 537, 539 (2d Cir. 2005); Neufeld v. Neufeld, 172 F.R.D. 115, 118 (S.D.N.Y. 1997) (party canceled deposition and failed to re-schedule it, refused to appear for a subsequent court-ordered deposition, and only appeared after being informed that case would be dismissed if she did not appear). And while Hibbert's lapses have been frustrating and inexplicable, this Court finds that they were not motivated by bad faith or in willful defiance of this Court's orders. Nevertheless, Hibbert is now on notice that any future failure to timely and completely respond to Movants' discovery requests may result in more severe sanctions, including striking his answer and dismissing his third party claims.

Moreover, in determining the appropriate measure of sanctions, this Court must first consider that "there is no indication that lesser sanctions will not be effective in ensuring [Hibbert's] compliance with further orders of this Court." Dragon Yu Bag Manufacturing Co. Ltd. v. Brand Science, LLC, 282 F.R.D. 343, 345 (S.D.N.Y. 2012). Monetary sanctions, "coupled with an order requiring [Hibbert] to sit for depositions . . . at this stage fulfill the purpose of sanctions under Rule 37, namely to ensure that a party will not benefit from its own failure to comply, as well as specific and general deterrence." Dragon Yu, 282 F.R.D. at 345.

Accordingly, Hibbert is sanctioned in the amount of $12,500, which he should pay directly to Movants. This sanction reflects a portion of the attorneys' fees incurred by Movants in bringing this motion, and takes into account that Movants were only partially successful in securing the relief they sought. In this Court's discretion, the sanctions represent "an award of costs and attorney's fees and sanctions" that are "related causally—and not simply temporally—to the sanctionable conduct." Virginia Props., LLC v. T-Mobile Northeast LLC, --- F.3d ----, 2017 WL 3197539, at *2 (2d Cir. July 28, 2017) (citing Goodyear Tire & Rubber Co v. Haeger, 137 S. Ct. 1178, 1186 (2017)). Indeed, sanctions "beyond that are punitive rather than compensatory and therefore may not be imposed without procedural guarantees applicable in criminal cases, such as a beyond a reasonable doubt standard of proof." Virginia Props., 2017 WL 3197539, at *2.

Finally, Hibbert is directed to respond to all outstanding discovery requests and appear for deposition consistent with the schedule established in this Order.

II. Anti-Suit Injunction

On May 9, 2017, Hibbert commenced an action against Movants in the Commercial Division of the Supreme Court of Judicature of Jamaica, alleging in essence, the same claims at issue in this action (the "Jamaican Action"). While the claims are styled differently, his lawsuit arises from the same operative facts here—that he was duped into signing away to Keep on Kicking and Chetata the administration and publishing rights in his musical compositions. Movants seek an order directing Hibbert to dismiss the Jamaican Action, or to enjoin him from further pursuing these claims until the resolution of this action.

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." Paramedics Electromedicina Comercial, Ltda. v. GE

4

Med. Sys. Info. Tech., Inc, 369 F.3d 645, 652 (2d Cir. 2004). Principles of comity "counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint." Paramedics, 369 F.3d at 652.

"An anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." Paramedics, 369 F.3d at 652 (citing China Trade and Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987)). Once those two requirements are satisfied, courts are directed to consider a number of additional factors, including whether the parallel litigation would: (1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment. See Ibeto Petrochemical Industries Ltd. v. M/T Beffen, 475 F.3d 56, 64 (2d Cir. 2007).

Here, the threshold requirements for an anti-suit injunction are present. First, the same parties are involved in both this action and the Jamaican Action. Second, resolution of the remaining claims in this action, which involves interpretation of the parties' administration and publishing rights in Hibbert's musical compositions, will dispose of the claims in the Jamaican Action. Even though Hibbert's complaint in the Jamaican Action are styled differently from his counterclaims here, "[c]ourts in this Circuit have found anti-suit injunctions appropriate even when the claims in the foreign and domestic actions were not precisely identical, but were at least based on the same underlying dispute." Bailey Shipping Ltd. v. American Bureau of Shipping, 2013 WL 5312540, at *10 (S.D.N.Y. Sept. 23, 2013). Indeed, Hibbert's third party complaint against Chetata mirrors his Jamaican Action claims against Movants relying, in large

5

part, on Movants' alleged misrepresentations inducing Hibbert to enter into the Exclusive Administration Agreement and fraudulently laying claim to the rights in his compositions. (Compare Third Party Complaint, ECF No. 29, at ¶¶ 108–116 with Affidavit of Marc-Antoine Chetata in Support of Motion for Sanctions, ECF No. 64, Ex. 2, at ¶¶ 23–30.)

The additional discretionary factors also weigh in favor of an injunction. The first and third factors "have been described as having greater significance—namely, whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum." Ibeto Petrochemical, 475 F.3d at 64. The Jamaican Action undermines this Court's jurisdiction especially in view of this Court's August 2016 order resolving some of the parties' claims— claims which appear to have been re-asserted in Jamaica. See MasterCard Intern. Inc. v. Fed. International de Football Ass'n., 2007 WL 631312, at *6 (S.D.N.Y. Feb. 28, 2007) ("[T]here is less justification for permitting a second action . . . after a prior court has reached a judgment on the same issues."). Moreover, public policy favors finality of judicial decisions, even if there are remaining claims to be adjudicated. A Jamaican court's ruling on similar issues may create inconsistent outcomes. In sum, there is nothing in Hibbert's submission belying the notion that the Jamaican Action is a hastily filed attempt to end run this action and circumvent the rulings rendered against Hibbert.

The second factor—that the foreign action would be vexatious—also favors enjoining Hibbert because some of his counterclaims have been dismissed by this Court and should not be re-litigated abroad. The fourth factor—prejudice to other equitable considerations—is satisfied where the temporal proximity between this motion for sanctions and the commencement of the Jamaican Action creates the appearance that Hibbert sought to distract the parties from litigating the claims here in favor of a more convenient forum. Permitting

Hibbert to do that, especially when this action began nearly two years ago, constitutes the type of prejudice to other equitable considerations that the fourth factor is intended to address. Finally, the fifth factor is satisfied largely on grounds that Movants have incurred a substantial amount of time and expense to litigate these claims here for the past two years. Compelling Movants to participate in essentially the same action in another foreign forum would result in undue burden and unfair prejudice.

Having satisfied the anti-suit injunction factors, this Court must now determine whether a preliminary injunction is appropriate. "As with any preliminary injunction application, a party seeking an anti-suit injunction must satisfy the ordinary test for a preliminary injunction." Software AG, Inc. v. Consist Software Solutions, Inc., 323 Fed. App'x 11, 12 (2d Cir. 2009). Movants must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. In re Millenium Seacarriers, Inc., 458 F.3d 92, 98 (2d Cir. 2006).

The specter of inconsistent rulings, particularly where this Court has already dismissed some of the claims, constitutes irreparable harm. See Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995) (movant is irreparably harmed when it "compelled litigate this action on two continents, and may be subject to inconsistent rulings."). That harm is further compounded by the additional time and expense that Movants will incur (and have already incurred) to re-litigate the underlying claims in the Jamaican Action. Further, at this juncture in the litigation, there are sufficiently serious questions going to the merits to make them a fair ground for litigation. That the parties are engaged in the discovery process presents a question on the merits regarding each of their

remaining claims. Accordingly, Hibbert is preliminarily enjoined from pursuing the Jamaican Action at least until this action has been resolved.

III. Order of Attachment

The "provisional remedy of attachment is discretionary with the trial court, and when jurisdiction already exists, attachment should issue only upon a showing that drastic action is required for security purposes." Lamprecht v. Comte, 1994 WL 323580, at *1 (S.D.N.Y. July 6, 1994). Under CPLR § 6212(a), Movants must demonstrate that they (1) probably will succeed on the merits, (2) that one or more grounds enumerated in § 6201 exist, and (3) that the amount demanded from defendant exceeds all counterclaims known to plaintiff.

Fatal to Movants' request is their failure to show a probability of success on the merits. While some of their claims have been addressed in their favor, this action is far from over. Movants' contention that they are likely to prevail—or already have prevailed—is rooted in their misguided belief that they are entitled to their preferred form of sanctions dismissing Hibbert's counterclaims and granting declaratory relief as to their claims. But discovery is underway to address these remaining claims, and Movants may not be relieved from that process simply because Hibbert delayed it. At this point, there is no indication either way that any one of the parties will prevail on the merits.

The case for granting an order of attachment is even less compelling in view of Movants' argument that the order is "necessary . . . because only by attaching Hibbert's assets can Movants be sure of satisfying their judgment." (Mot. at 10.) That is always true for any litigant seeking to collect on a judgment, especially against non-domiciliaries. But that alone does not justify entering an order of attachment where Movants had not, until now, doubted their ability to enforce a judgment against Hibbert. Nor have Movants provided any evidence that

8

Hibbert recently attempted to make himself judgment proof. Accordingly, Movants' motion for an order of attachment is denied.

IV. Discovery Schedule

The parties are directed to complete all document discovery by September 30, 2017. Hibbert is directed to appear for deposition in New York no later than October 31, 2017. Failure to comply may result in the imposition of more severe Rule 37 sanctions, including dismissal of Hibbert's counterclaims.

## CONCLUSION

For the foregoing reasons, Movants' motion for sanctions is granted in part and denied in part. Hibbert is sanctioned a total of $12,500, which should be paid directly to Movants no later than August 31, 2017. Movants' motion to enjoin Hibbert from pursuing his claims in the Jamaican Action is granted. The parties are directed to submit a proposed injunctive relief order by August 4, 2017. Finally, Movants' motion for an order of attachment against Hibbert is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 63.

Dated: July 31, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.